UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-159-C**

**EVA JEWEL HOGAN, individually and as Administratrix of the Estate of Robert M. Hogan,**     **PLAINTIFF,**

**V.**     <u>**MEMORANDUM OPINION AND ORDER**</u>

**GOODRICH CORPORATION, ET AL.,**     **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendants, Shell Oil Company, Uniroyal, Inc., PPG Industries, Inc., Goodrich Corporation, The American Chemistry Council, and Zeneca, Inc., to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The other defendants, Bayer Cropscience, Inc., Ethyl Corporation, Air Products & Chemicals, Inc., Pactiv Corporation, Tenneco Automotive, Inc., Bridgestone/Firestone, Inc., Occidental Chemical Corporation, Olin Corporation, Gencorp, Inc., Honeywell International, Inc., Dow Chemical Company, Union Carbide Corporation, Monsanto Corporation, Georgia Pacific Corporation, Borden Chemical, Inc., and Goodyear Tire & Rubber Company, have joined in the motion to dismiss and have adopted the initial motion to dismiss. Additionally, Gencorp, Inc., has filed a motion to supplement the motion to dismiss, which the court will grant, permitting it to supplement its motion to dismiss. Two defendants, ConocoPhillips Company and Sasol, Inc., did not file motions to dismiss or join in the motion to dismiss. The court, having reviewed the record and being otherwise sufficiently advised, will grant the defendants' motion to dismiss in part and deny it in part.

## I. LEGAL STANDARD

A dismissal under Rule 12(b)(6) can be granted only when the movant establishes beyond doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must consider the pleadings in the light most favorable to the plaintiff, and the factual allegations in the complaint must be taken as true. *Jones v. Carlisle*, 3 F.3d 945, 947 (1993).

## II. FACTUAL BACKGROUND

The plaintiff, Eva Jewell Hogan, in her individual capacity and as executor of the estate of Robert M. Hogan, filed this action in the Jefferson Circuit Court on February 22, 2005.[1] The defendants removed it to this court on March 15, 2005, based on diversity jurisdiction. The plaintiff's complaint lists three categories of defendants: (1) B.F. Goodrich and its successors in interest as Robert Hogan's employer; (2) manufacturer/supplier defendants; and (3) "other conspiring defendants." The complaint contains nine counts: (1) intentional tort and fraud against B.F. Goodrich; (2) conspiracy with B.F. Goodrich to commit intentional tort and fraud by the manufacturer/ supplier defendants; (3) aiding and abetting B.F. Goodrich in committing intentional tort and fraud by manufacturer/supplier defendants; (4) breach of duty to warn by manufacturer/supplier defendants; (5) products liability; (6) breach of implied warranty in tort by manufacturer/supplier defendants; (7) fraud by manufacturer/supplier defendants; (8) conspiracy with manufacturer/supplier defendants to commit fraud, breach of duty to warn, product liability, and breach of implied

---

[1] The plaintiff filed a similar action in the Court of Common Pleas for Cuyahoga County, Ohio. The court dismissed the action on January 5, 2005, on the basis of forum non conveniens. Subsequently, the plaintiff filed this action.

warranty by conspiring defendants; (8) aiding and abetting manufacturer/supplier defendants to commit fraud, breach of duty to warn, product liability, and breach of implied warranty by conspiring defendants; and (9) punitive damages against all defendants.

The "manufacturer/supplier" defendants are Air Products & Chemicals, Inc.; ConoccoPhillips, Inc., successor-in-interest to Conoco, Inc.; Dow Chemical Company; Ethyl Corporation, Georgia Pacific, Inc.; Goodrich Corporation, f/k/a B.F. Goodrich; Honeywell International, Inc. f/k/a Allied Signal, Inc., successor-in-interest to Allied Chemical Corporation; Monsanto Corporation; Occidental Chemical Corporation, successor-in-interest to Hooker Chemical, etc.; Pactiv, Inc., successor-in-interest to Tenneco, Inc.; PolyOne Corporation, successor-in-interest to the Geon Company; PPG Industries, Inc.; Sasol, Inc., f/k/a Condea Vista, Inc.; Shell Oil Company; Tenneco Automotive, Inc., successor-in-interest to Tenneco, Inc.; Union Carbide Corporation; and Uniroyal, Inc.

The "conspiring defendants" are The American Chemistry Council, f/k/a The Chemical Manufacturers Association and the Manufacturing Chemists Association; Bayer CropScience, Inc., successor-in-interest to Rhone-Poulenc, Inc., individually and as successor-by-merger to Stauffer Chemical Company; Bridgestone/Firestone, Inc., individually and as successor-in-interest to The Firestone Tire & Rubber Company and Firestone Plastics Company, a division of The Firestone Tire & Rubber Company; Borden Chemical, Inc.; GenCorp, individually and as successor-in-interest to General Tire and Rubber Company; The Goodyear Tire and Rubber Company; Gulf Oil Corporation, individually and as successor-in-interest to Chevron U.S.A., Inc; Olin Corporation; and Zeneca, Inc., f/k/a ICI Americas, Inc., a corporation organized and existing under and by

virtue of the laws of the state of Avon Lake.  The conspiring defendants are members of the vinyl chloride industry, which bought from and sold to each other certain products, and trade organizations through which the members of the vinyl chloride industry routinely acted.

Mr. Hogan worked at the B.F. Goodrich plant in Louisville, Kentucky, from January 5, 1949, until February 2, 1979, as a chemical helper and chemical operator, cleaning vats, vessels, and silos, reading meters on the equipment, and otherwise operating machinery used in processing vinyl chloride at the plant.  (Complaint, ¶ 16-17)  He was exposed to vinyl chloride monomer and vinyl chloride-containing products during his employment and often smelled the vinyl chloride while he was working.  (Complaint, ¶ 17-18) The plaintiff alleges that exposure to the vinyl chloride was the direct and proximate cause of his developing cancer of the liver called hepatocellular carcinoma.  He died on May 2, 2003. (Complaint, ¶ 19)

## III.   ANALYSIS

The defendants argue that all of the plaintiff's claims should be dismissed for failure to state a claim.  Each of the plaintiff's claims is discussed below.

### A.   Counts I and VII – Fraud

The defendants argue that the plaintiff's claims for fraud are barred by Kentucky's ten-year statute of repose.[2]  The plaintiff argues that the claims were filed timely because

---

[2] B. F. Goodrich also argues that a fraud claim against it is barred by the Kentucky Worker's Compensation Act ("KWCA").  All of the defendants argue that the plaintiff's fraud claims against them fail because she failed to plead fraud with particularity.  Since the fraud claims fail due to the statute of repose, the court need not address these alternative arguments.

4

they were filed within a year of Mr. Hogan's death.  Alternatively, the plaintiff argues that her fraud claims are valid because the statute of repose is unconstitutional under the Kentucky constitution.

Kentucky has a five-year statute of limitations for fraud claims running from the date of accrual, which begins on the date of discovery of the fraud.  KRS 413.120(12).  In all cases, however, the claim must be commenced no later than ten years from the perpetration of the fraud.  KRS 413.130(3).  The ten-year bar of fraud actions applies even if the injured party did not know of the fraud before the time limit expires.

The plaintiff alleges that B. F. Goodrich fraudulently concealed material facts about vinyl chloride health hazards and affirmatively misrepresented that exposure levels to 500 parts per million of vinyl chloride monomer in the air was a safe limit and that her fraud claim did not accrue until Mr. Hogan was diagnosed and died, because the harm had not been suffered yet.  Since the alleged fraud occurred at the very latest in 1979, when Mr. Hogan stopped working at the Louisville plant, even if the claim did not accrue until the injury occurred, it is barred by the ten-year fraud statute of repose and must be dismissed.

The ten-year statute of repose for fraud claims is valid under the Kentucky constitution.  In *Saylor v. Hall*, S.W.2d 218 (Ky. 1973), the Kentucky Supreme Court held that a statute of repose barring a claim before it exists is impermissible if it destroys a constitutionally protected right.  Fraud claims are different from the negligence claims presented in *Saylor*.  In fact, the *Saylor* court distinguished fraud claims noting that with fraud, the injury – the denial of a legally protected interest – is immediate, whereas no harm in *Saylor* occurred before the time expired.

The plaintiff has not shown that the fraud statute of repose is unconstitutional under

5

the state constitution's "open courts" provision. No Kentucky court has decided the issue. This court finds that, if presented with the issue, Kentucky courts would find the fraud statute of repose valid under the state constitution, and it declines to hold this long-standing Kentucky statute invalid.

**B.    Counts IV, V, and VI – Products Liability**

Kentucky courts recognize three forms of products liability claims – strict liability, negligence, and breach of warranty.[3] *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530 (Ky. 2003). To the extent that the plaintiff attempts to state a claim for products liability against Mr. Hogan's employer, BF Goodrich, as she admits in her response to the defendants' motion, her claim fails because it is barred by the Kentucky Workers Compensation Act. With regard to the manufacturer/supplier defendants, the plaintiff has stated valid products liability claims in the form of both strict liability and negligence.[4]

The strict liability theory in tort is set out in Section 402A of the *Restatement (Second) of Torts* and was recognized in *Dealers Transport Co., Inc. v. Battery Distributing*

---

[3] Breach-of-warranty claims are governed by the terms of the contract and statutory provisions of the U.C.C. In her response to the defendant's motion, the plaintiff notes that she is not seeking recovery under a contract theory. Even if she were seeking such a claim, it is barred due to a lack of privity. Kentucky's commercial code does not expressly extend breach of warranty standing beyond the buyer/seller setting. There is no privity of contract between Mr. Hogan and the manufacturer/supplier defendants, so a claim for breach of warranty under the U.C.C. is invalid. *Dealers Transp. Co. v. Battery Distrib. Co.*, 402 S.W.2d 441 (Ky. Ct. App. 1966) (holding that privity of contract is required for a breach-of-warranty products liability claim).

[4] In Count IV, the plaintiff asserts a claim for breach of duty to warn by the manufacturer/supplier defendants. In Count V, the plaintiff asserts general claims for products liability. In Count VI, the plaintiff asserts a claim for breach of implied warranty in tort. All three of these Counts are related and subsumed in the form of strict liability and negligence products liability claims.

*Co.*, 402 S.W.2d 441 (Ky. 1965). It provides for a cause of action for physical harm to person or property caused by a product defect against a manufacturer or commercial seller of a product. Ordinary negligence is another theory for liability for personal injury or property damage against the manufacturer or commercial seller of a product. *C.D. Herme, Inc. v. R.C. Tway Co.*, 294 S.W.2d 534 (Ky. 1956). Privity of contract is not necessary for claims under the strict liability and negligence theories. *Allen v. Coca-Cola Bottling Co.*, 403 S.W.2d 20 (Ky. 1966). A plaintiff in a products liability case may recover under the theories of defective design, defective manufacture, or failure to warn. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247 (Ky. 1995).

The statute of limitations for both strict liability and negligence claims is governed by KRS 413.140(14) in conjunction with the Kentucky discovery rule adopted in *Louisville Trust Co. v. Johns-Manville Products, Inc.*, 580 S.W.2d 497 (Ky. 1979). The discovery rule provides that a cause of action does not accrue until "a plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's conduct." *Id.* The plaintiff's products liability claims for wrongful death are timely because they were filed within one year of discovery of the harm, which was Mr. Hogan's death.

To state a strict liability claim, the plaintiff must allege that the product was in a defective condition and unreasonably dangerous such that an ordinarily prudent company engaged in the manufacture of that product, being fully aware of the risk, would not have put it on the market. *Tobin v. Astra Pharma. Prods., Inc.*, 993 F.2d 528, 536 (6th Cir. 1993) (applying Kentucky law). Negligence claims differ from strict liability claims in that they

depend upon what a prudent manufacturer, engaged in a business similar to that of the defendant, by exercise of ordinary care actually should have discovered and foreseen, whereas strict liability claims depend upon what the manufacturer would have anticipated had it been aware of the condition of and potentialities inherit in the product when it put the product on the market, regardless of whether it was aware. *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976). While negligence claims evaluate the conduct of the manufacturer, strict liability claims evaluate the condition of the product. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530 (Ky. 2003).

The plaintiff has made sufficient allegations to state valid products liability claims under both strict liability and negligence. She has alleged that the manufacturer/supplier defendants supplied vinyl chloride monomer, a defective and unreasonably dangerous product due to its design and due to the lack of warnings, to Mr. Hogan's employer, that he was a foreseeable user of that product, and that the product caused his death. *See Radcliffe Homes, Inc. v. Jackson*, 766 S.W.2d 63 (Ky. App. 1989) citing *Restatement (Second) of Torts*, § 402A (1965). She alleges that the manufacturer/supplier defendants knew that vinyl chloride products were inherently and unreasonably dangerous and defective when ingested, breathed, or absorbed, but failed to warn of these dangers. (Complaint ¶ 253, 258) Further, she alleges that the vinyl chloride products failed to comply with the representations and warranties made about their intended uses. (Complaint ¶ 266-67) She also alleges that the products were defective when they left the defendants' control. (Complaint ¶ 269) These allegations are sufficient to support a claim under products liability.

The defendants' argument, that the plaintiff's products liability claims fail because she failed to identify a specific product and a specific defendant that caused the injury, is without merit. Relying on the "concert of action" theory from Section 876 of the *Restatement (Second) of Torts*, as recognized in *Farmer v. Newport*, 748 S.W.2d 162 (Ky. Ct. App. 1988), the plaintiff identified a group of manufacturers/suppliers, and without identifying a particular manufacturer or supplier as being responsible for the injury, she shifted the burden to the defendants to show that they are not responsible for the injury. *See Dawson v. Bristol Labs.*, 658 F. Supp. 1036 (W.D. Ky. 1987) (applying Kentucky law).

> To state a claim under the "concert of action" theory:
>
> First, plaintiffs must identify the product causing the harm and prove that the defendants' acts in marketing and promoting the allegedly defective product were a substantial factor in causing the plaintiff's injuries. Second, plaintiffs must establish that the defendants acted by cooperative or concerted activities. . . . Finally, plaintiffs must prove defendants contravened a particular standard of care.

*Id.* at 1039-40. The plaintiff alleged that vinyl chloride monomer, manufactured and supplied by the defendants, caused Mr. Hogan's death and that the defendants failed to adequately warn of this defect. Furthermore, the plaintiff alleges that the defendants, either through parallel activities or independently, acted to encourage each other's failure to adequately warn. Finally, the plaintiff alleges that the defendants acted negligently, failed to warn of the possible hazards of which they were or should have been aware, and breached implied warranties with respect to the product. While the plaintiff may not be able to prove this "concert of action" theory, she has made allegations sufficient to survive a motion to dismiss.

### C. Counts II and VIII – Conspiracy

In Kentucky, a civil conspiracy is defined as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321 (Ky. 1936). Before a conspiracy can be found, a "necessary allegation is that the damage or death resulted from some overt act done pursuant to or in furtherance of the conspiracy." *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. 1945). The "gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). Accordingly, to state a valid claim for civil conspiracy, the plaintiff must sufficiently allege that an underlying wrong existed.

The plaintiff alleges that the underlying wrongs for her civil conspiracy claims are fraud and violations of the Kentucky Products Liability Act. To the extent that her conspiracy claim is based on fraud, it must be dismissed because the substantive claim for fraud was dismissed. To the extent that her claim is based on products liability, it fails because there is no authority that civil conspiracy claims can be based on negligence or strict liability. To support a civil conspiracy claim, some underlying tortious act must be taken. *See also Harris v. Brush Engineered Materials, Inc.*, 2005 U.S. Dist. LEXIS 18041 (S.D. Miss. 2005) (dismissing claims for civil conspiracy where plaintiff-victims were exposed to beryllium dust); *Ruth v. A.O. Smith Corp.,* 2005 U.S. Dist. 23235 (N.D. Ohio 2005) (civil conspiracy cannot succeed when premised on a failure to warn).

### D. Count III – Aiding and Abetting

No Kentucky court has recognized a separate tort of aiding and abetting; Kentucky courts recognize only one tort of concerted action – conspiracy – and aiding and abetting is one way to show concerted action under the civil conspiracy scheme.  The plaintiff argues that this court should adopt the tort of aiding and abetting as set forth in Section 276 of the *Restatement (Second) of Torts* as a separate tort.  The court declines to do so because there is no indication that the Kentucky courts would recognize it as a separate tort.

E.   **Count XI – Punitive Damages Against All Defendants**

In Count XI, the plaintiff alleges that the defendants acted "with conscious and flagrant disregard for the rights and safety of plaintiff . . . and deliberately engaged in fraud, willful and wanton misconduct and malice . . . ."  (Complaint ¶ 331)  Count XI is not a separate claim for relief but a request for punitive damages.  Because claims remain for which punitive damages may be awarded, the plaintiff's request is valid.  Accordingly,

**IT IS ORDERED** that the motions of the defendant, Gencorp, Inc., to supplement the motion to dismiss (DE 31) and to supplement the response (DE 72) are **GRANTED**.

**IT IS FURTHER ORDERED** that the motions of the defendants for joinder in the motion to dismiss (DE 27, 30, 31, 33, 34, 43, 72, 75) are **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to strike the submissions of the plaintiff (DE 96) is **GRANTED** because review under Federal Rule of Civil Procedure 12(b)(6) is limited to the four corners of the complaint.

**IT IS FURTHER ORDERED** that the motions of the defendants to dismiss (DE 21, 24, 26, 27, 28, 29, 31, 32, 33, 35, 39, 75) are **GRANTED IN PART** and **DENIED IN PART**.

Counts I, II, III, VII, VIII, and IX are dismissed with prejudice. Counts IV, V, and VI, regarding products liability, are valid and shall not be dismissed. Court XI is not dismissed because it addresses a measure of relief sought (punitive damages), albeit not a separate theory.

**IT IS FURTHER ORDERED** that the defendant Gencorp's motion to supplement authorities (DE 100) is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants shall file an answer to the plaintiff's complaint on the remaining claims within 20 days from the date of entry of this order.

Signed on  January 17, 2006

**Jennifer B. Coffman, Judge**
**United States District Court**